ATTORNEY FOR PETITIONER:
**JOHN C. SLATTEN**
MARION COUNTY ASSESSOR'S
OFFICE
Indianapolis, IN

ATTORNEYS FOR RESPONDENT:
**PAUL M. JONES, JR.**
**MATTHEW J. EHINGER**
ICE MILLER LLP
Indianapolis, IN

# IN THE
# INDIANA TAX COURT

**FILED**

Dec 03 2015, 12:58 pm

*Kevin S. Smith*

**CLERK**

of the supreme court,
court of appeals and
tax court

| | | |
|---|---|---|
| MARION COUNTY ASSESSOR, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Cause No. 49T10-1212-TA-00082 |
| | ) | |
| GATEWAY ARTHUR, INC., | ) | |
| | ) | |
| Respondent. | ) | |

ON APPEAL FROM A FINAL DETERMINATION OF
THE INDIANA BOARD OF TAX REVIEW

**FOR PUBLICATION**
**December 3, 2015**

FISHER, Senior Judge

This case examines whether the Indiana Board of Tax Review erred in reducing Gateway Arthur, Inc.'s real property assessment for the 2006 tax year. The Court finds that the Indiana Board did not err.[1]

**FACTS AND PROCEDURAL HISTORY**

During the 2006 tax year, Gateway Arthur owned a portion of the Indianapolis retail shopping center known as The Shoppes at County Line Road. Specifically,

---

[1] In a companion decision issued prior to this decision, the Court has affirmed the Indiana Board's final determination that reduced Gateway Arthur's assessments for the 2007, 2008, 2009, and 2010 tax years. See Marion Cnty. Assessor v. Gateway Arthur, Inc., No. 49T10-1212-TA-00081, 2015 WL 5734428 (Ind. Tax Ct. Sept. 30, 2015).

Gateway Arthur owned six parcels that contained: 1) three buildings with about 270,000 square feet of leasable space; 2) a retention pond; 3) two access roads; and 4) a pylon sign (collectively, "the subject property"). The Marion County Assessor assigned the subject property a total assessed value of $17,451,900 for the 2006 tax year.

By letter dated July 4, 2008, Gateway Arthur challenged its 2006 assessment with the Marion County Property Tax Assessment Board of Appeals ("PTABOA"). The PTABOA, however, did not issue a decision in its appeal within the statutorily prescribed period. As a result, Gateway Arthur sought relief from the Indiana Board on June 3, 2011. Before the Indiana Board conducted the administrative hearing, it determined that the Assessor bore the burden of proof with respect to the appeal because the subject property's assessment had increased more than 5% from 2005 to 2006. (See Cert. Admin. R. at 231-42.)

The Indiana Board conducted a hearing on May 10, 2012, during which the Assessor presented, among other things, an Income Analysis that valued only the subject property's three buildings at $18,472,400 for the 2006 tax year. (See Cert. Admin. R. at 923, 1146-58.) The Assessor also presented a computer printout indicating that Gateway Arthur purchased the subject property in 2007 for $21,000,000. (See Cert. Admin. R. at 924-25.) The Assessor claimed that his Income Analysis, along with the subject property's 2007 purchase price, supported his assessment because the valuations were within range of one another. (See Cert. Admin. R. at 1153-54.)

In response, Gateway Arthur claimed that the Assessor's Income Analysis should be afforded no weight because it did not accurately account for property taxes or expenses. (See Cert. Admin. R. at 1226-31, 1235-36, 1250-55.) Gateway Arthur also

claimed that the Assessor's computer printout contained several flaws and was not a reliable indicator of the subject property's value for the 2006 tax year. (See Cert. Admin. R. at 1181-94, 1201-02.)

On October 22, 2012, the Indiana Board issued a final determination in which it determined that the Assessor had failed to make a prima facie case because his evidentiary presentation lacked probative value. (See Cert. Admin. R. at 375-77 ¶¶ 44-52.) As a result, the Indiana Board reinstated the subject property's 2005 settlement value of $10,504,100 for the 2006 tax year. (See Cert. Admin. R. at 377 ¶ 52.)

On December 6, 2012, the Assessor initiated this original tax appeal. The Court heard oral argument on November 22, 2013. Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

The party seeking to overturn an Indiana Board final determination bears the burden of demonstrating its invalidity. Hubler Realty Co. v. Hendricks Cnty. Assessor, 938 N.E.2d 311, 313 (Ind. Tax Ct. 2010). The Court will reverse a final determination if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of or short of statutory jurisdiction, authority, or limitations; without observance of the procedure required by law; or unsupported by substantial or reliable evidence. IND. CODE § 33-26-6-6(e)(1)-(5) (2015).

## ANALYSIS

The Assessor claims that the Indiana Board's final determination must be reversed because it erred in 1) determining that the Assessor rather than Gateway

3

Arthur bore the burden of proof, 2) determining that the Assessor's evidence lacked probative value, and 3) valuing the subject property at $10,504,100 for the 2006 tax year. The Court will address these claims in turn.

### 1. The Burden of Proof

The Assessor contends that the Indiana Board's determination that he bore the burden of proof is contrary to law because it was based on Indiana Code § 6-1.1-15-17, i.e., a version of the burden-shifting statute that simply did not apply to Gateway Arthur's 2006 assessment.[2] (See Pet'r Br. at 1-3; Pet'r Resp. Br. at 1-4.) The Court disagrees.

The burden-shifting statute has undergone several iterations since its 2009 enactment. See IND. CODE § 6-1.1-1-15-1(p) (2009) (repealed 2011); IND. CODE § 6-1.1-15-17 (2011) (repealed 2012); IND. CODE § 6-1.1-15-17.2 (2012) (amended 2014). See also Orange Cnty. Assessor v. Stout, 996 N.E.2d 871, 873-74 (Ind. Tax Ct. 2013) (discussing the history of the burden-shifting statute). Nonetheless, its application has always been triggered by the filing of an appeal in which there was an annual increase in the assessed value of property in excess of 5%, not the act of assessing property.[3] See, e.g., Stout, 996 N.E.2d at 874-75.

Here, the certified administrative record reveals that the subject property's assessment increased more than 5% from 2005 to 2006. (See, e.g., Cert. Admin. R. at

---

[2]  The Assessor has also claimed that the Indiana Board's interpretation of the burden-shifting statute is contrary to law because nothing within the statutory language suggests that it placed the burden of persuasion rather than the burden of production on the Assessor. (See Pet'r Br. at 2-3.) See also Peters v. Garoffolo, 32 N.E.3d 847, 852 n.6 (Ind. Tax Ct. 2015) (explaining the difference between the burden of persuasion and the burden of proof). The Court, however, need not resolve this issue to dispose of the case.

[3]  The Assessor has requested that the Court reverse Stout, asserting that the act of assessing property should trigger the application of the burden-shifting statute because the statute involves a litigant's substantive rights, not merely procedural matters. (See Oral Arg. Tr. at 7-11, 44; Pet'r Resp. Br. at 2-4.) The Court declines the Assessor's request.

363 ¶¶ 11-12.) Consequently, the Court cannot say that the Indiana Board erred in determining that the Assessor rather than Gateway Arthur bore the burden of proof.

## 2. The Probative Value of the Assessor's Evidence

Next, the Assessor claims that the Indiana Board erred in determining that his evidence lacked probative value. More specifically, the Assessor argues that the record evidence does not support the Indiana Board's determinations that a) his Income Analysis misconstrued the effect of property taxes, and b) the subject property's purchase price lacked probative value. (See Pet'r Br. at 4-5; Oral Arg. Tr. at 11-17.)

### a. The property taxes

The Assessor argues that the Indiana Board's determination that his Income Analysis "grossly" misconstrued the impact of property taxes on the subject property by failing to use an expense ratio and capitalization rate that included property taxes was improper. (See Pet'r Br. at 4-5 (citing Cert. Admin. R. at 375 ¶¶ 46-47).) As support, the Assessor points out that the record evidence affirmatively indicates that the 25% expense ratio included property taxes. (See Pet'r Br. at 4-5 (citing Cert. Admin. R. at 1079-82 (providing that the median operating expense for certain shopping centers was 26.41% when property taxes were included and 17.27% when property taxes were excluded)).) (See also Cert. Admin. R. at 1153-54.)

Nevertheless, during cross-examination, the Assessor's representative specifically testified that neither the 25% expense ratio nor the capitalization rate included property taxes. (See Cert. Admin. R. at 1206-09.) That testimony was neither subsequently retracted nor clarified. (See Cert. Admin. R. at 1210-60.) Consequently, when the Court is faced with conflicting record evidence, as is the case here, it will defer

5

to the Indiana Board so long as a reasonable mind could find sufficient evidence in the record to support that finding. See Hamilton Cnty. Prop. Tax Assessment Bd. of Appeals v. Oaken Bucket Partners, LLC, 938 N.E.2d 654, 657-58 (Ind. 2010). Accordingly, the Court cannot say that the Indiana Board erred in determining that the Assessor's Income Analysis lacked probative value.

### b. The 2007 purchase price

Next, the Assessor explains that during the Indiana Board hearing, he presented a computer printout that indicated that Gateway Arthur purchased three of the subject property's six parcels for $21,000,000 in 2006. (See Cert. Admin. R. at 924-26, 1115, 1136-46 (explaining that although the subject property's original sales disclosure form no longer existed, a taxing official had recorded the information from that form into a computer database).) Accordingly, the Assessor contends that the Indiana Board erred when it rejected the printout as evidence of the subject property's actual value. (See Pet'r Br. at 4.) The Assessor is incorrect.

The Indiana Board concluded that the $21,000,000 purchase price was not probative because the Assessor's computer printout, among other things, failed to indicate who entered the data, failed to include all six parcels, and contained the wrong "sale" and "deed" dates. (See Cert. Admin. R. at 376-77 ¶ 49, 437-38, 1181-94 (indicating that Gateway Arthur purchased the subject property, along with 35 other properties, in a portfolio sale for $423.5 million in 2007).) Moreover, the Indiana Board found the testimony of Gateway Arthur's witness that when a property is sold as part of a portfolio, one must ascertain what variables the allocated sales price is based upon (i.e., does it include something more than the "sticks and bricks") to determine whether

6

the allocated sales price actually reflects the property's value to be persuasive.  (See Cert. Admin. R. at 377 ¶ 50, 1233-34.)

The Indiana Board weighed the parties' evidence regarding the subject property's 2007 purchase price and ultimately determined that Gateway Arthur's evidence was more persuasive.[4]  Accordingly, the Court finds no basis for reversing the Indiana Board's rejection of the subject property's 2007 purchase price.  See, e.g., French Lick Twp. Tr. Assessor v. Kimball Int'l, Inc., 865 N.E.2d 732, 739 (Ind. Tax Ct. 2007) (explaining that when the Indiana Board understands a taxpayer's evidence and finds that it had probative value, the Court will not overturn that determination absent an abuse of discretion).

### 3.  The Subject Property's Valuation

The Assessor's final claim is that the Indiana Board erred in valuing the subject property consistent with its 2005 settlement value of $10,504,100.  (See Pet'r Br. at 5; Oral Arg. Tr. at 17.)  More specifically, the Assessor maintains that because Gateway Arthur did not present any valuation evidence of its own, the Indiana Board should have valued the subject property consistent with its 2006 assessed value of $17,451,900, an alternative Income Analysis valuation of $14,387,025, or the valuation set forth in Gateway Arthur's Appraisal of $12,600.[5]  (See Pet'r Br. at 5; Oral Arg. Tr. at 17-20.)

---

[4]  While the Assessor has asserted that Gateway Arthur should have been estopped from arguing that the allocated sales price was unreliable, he did not present that argument to the Indiana Board.  (Compare, e.g., Oral Arg. Tr. at 15-16 with Cert. Admin. R. at 1096-1260.)  The Court, therefore, declines to consider that argument on appeal.  See Kooshtard Prop. VIII, LLC v. Shelby Cnty. Assessor, 987 N.E.2d 1178, 1181-82 (Ind. Tax Ct. 2013) (explaining that claims may be waived when a litigant could have, but failed to, present them to the Indiana Board), review denied.

[5]  The Assessor introduced Gateway Arthur's Appraisal into evidence during the Indiana Board hearing.  (See Cert. Admin. R. at 624-97, 1110-14.)

While this appeal has been pending with the Court, the General Assembly amended the burden-shifting statute once more, providing that:

> If a county assessor or township assessor fails to meet the burden of proof under this section, the taxpayer may introduce evidence to prove the correct assessment. If neither the assessing official nor the taxpayer meets the burden of proof under this section, the assessment reverts to the assessment for the prior year, which is the original assessment for that prior year or, if applicable, the assessment for that prior year:
>
> (1) as last corrected by an assessing official;
>
> (2) as stipulated or settled by the taxpayer and the assessing official; or
>
> (3) as determined by the reviewing authority.

I.C. § 6-1.1-15-17.2(b). This amendment applied to all appeals pending as of its March 25, 2014 effective date. See I.C. § 6-1.1-15-17.2(e)(1).

Under the plain language of this amendment, Gateway Arthur was not required to submit independent valuation evidence. See I.C. § 6-1.1-15-17.2(b) (stating if an assessing official fails to meet its burden of proof, "the taxpayer may introduce evidence to prove the correct assessment" (emphasis added)). Furthermore, the statute specifically directed the reinstatement of a settlement value when, like here, an assessing official failed to satisfy its burden of proof and the taxpayer did not offer its own valuation evidence. See I.C. § 6-1.1-15-17.2(b)(2). Consequently, the Indiana Board did not err when it reinstated the subject property's settlement value of $10,504,100 for the 2006 tax year.

**CONCLUSION**

For the above-stated reasons, the final determination of the Indiana Board is AFFIRMED.

8